IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

GLORIA HARRIS                                                                   PLAINTIFF

v.                                                        CIVIL ACTION NO. 4:13CV109-SAA

THE CITY OF GREENWOOD,
BRANDON CHILD, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY,
WALTER HAWKINS, INDIVIDUALLY
AND IN HIS OFFICIAL CAPACITY,
AND JOHN DOES 1-10                                                            DEFENDANTS

## MEMORANDUM OPINION

Defendants[1] the City of Greenwood, Mississippi and Officer Brandon Childs have filed a motion for summary judgment. After carefully considering the motion, response, reply, exhibits, and supporting and opposing authority, the court finds that the motion should be granted.

### I. Factual and Procedural Background

The events which led to the filing of this action are terrible. Plaintiff Gloria Harris claims that she was raped by defendant Walter Hawkins while Hawkins was employed and on duty as Greenwood police officer in November 2012. On November 17, 2012, Harris telephoned the Greenwood Police Department after she and her boyfriend got into an altercation. Officers responded to the call, and the boyfriend left without incident. At 9:00 p.m. that evening, Harris

---

[1]Plaintiff named Walter Hawkins as a defendant and did serve him with a summons and copy of the Complaint. However, Hawkins failed to Answer the Complaint or file any responsive pleading. Plaintiff requested and received a Clerk's Entry of Default on March 7, 2014, but has never moved for a default judgment. Docket 39.

and three friends went to a club in Cruger, Mississippi where she remained until closing. When she returned home from the club around 2:00 a.m., she found her back door jammed. Suspecting that her boyfriend had returned and was waiting for her inside, Harris telephoned police for assistance. In response, Hawkins, a full time officer, and Childs, a reserve officer, were dispatched to plaintiff's home. Upon arriving, Harris explained her concerns, and Hawkins and Childs searched the home with weapons drawn. The officers found no intruders and advised Harris that they would return later to check on her.

Hawkins and Childs then resumed their patrol and pulled over a vehicle for performing an illegal turn. After patrolling for some period of time Hawkins and Childs returned to plaintiff's home. Hawkins advised Childs to remain in the vehicle while he checked on Harris. Hawkins knocked on plaintiff's door and advised her that he was a police officer. Harris let Hawkins in and closed and locked the door behind him. According to plaintiff, Hawkins then instructed

> her to remove her clothes and get on the bed. She got on the bed out of fear because he had a gun in the holster on his hip. He pulled his pants down but did not remove his holster. He subsequently raped her. She said the rape lasted about five minutes. Hawkins returned to the car and drove away.

After Hawkins left, Harris ran to her neighbor's house to call the police to inform them that she was raped by an officer and requested that the officers return to her house. Dispatch instructed Hawkins to return to her home where he found plaintiff and her friends waiting. The officers exited their car and Hawkins proceeded to Harris's front door while Childs remained in the yard. Plaintiff identified Hawkins as the officer who raped her. Plaintiff claims that Hawkins offered her forty dollars to remain quiet, but there is no corroboration of this statement.

Two women told Childs that plaintiff said an officer raped her. Childs joined Hawkins and plaintiff at the door and asked plaintiff to repeat her allegations. Childs then questioned Hawkins about the truthfulness of the allegations, and Hawkins replied that he did not know what Harris was talking about. Childs then called Officer Tasha Granderson with the Greenwood Police Department for assistance, and other officers arrived shortly thereafter.

Harris was taken to the hospital where a rape kit was performed, and the DNA tested was confirmed to be Hawkins. The Greenwood Police Department conducted an internal investigation, and the Leflore County Sheriff's Department conducted the criminal investigation. Hawkins was immediately placed on administrative leave with pay, and the day following receipt of the Mississippi Crime Lab Report that confirmed that Hawkins' DNA was found on plaintiff, Hawkins was placed on administrative leave without pay. Eight days later, Hawkins resigned from the Greenwood Police Department. Defendants believe that Hawkins accepted a plea bargain to the criminal charges that resulted in no jail time.

Harris has filed suit against Hawkins, Childs and the city of Greenwood seeking recovery for injuries Harris sustained as a result of the above events. In her Complaint, plaintiff asserts federal claims pursuant to 42 U.S.C. §1983 alleging that (1) Childs is liable for failing to prevent the sexual assault and (2) Greenwood is liable for failing to train, supervise or properly hire or screen its police officers, including Childs and Hawkins. Plaintiff also asserts state law claims of (3) violation of the Mississippi Tort Claims Act (MTCA); (4) false imprisonment; (5) assault and battery; and (6) intentional and negligent infliction of emotional distress. The defendant has moved for summary judgment, and the motion is fully briefed and ripe for review.

## II. Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting FED. R. CIV. P. 56(c), (e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[T]he issue of fact must be 'genuine.' When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586; see also *Kovacic v. Villarreal*, 628 F.3d 209 (5th Cir. 2010). "Conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment." *RSR Corp. v. International Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). Where a party opposes summary judgment on a claim or defense on which that party will bear the burden of proof at trial, and when the moving party can show a complete failure of proof on an essential element of the claim or defense, then all other issues become immaterial, and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, self-serving "affidavit or deposition testimony setting forth ultimate or

4

conclusory facts and conclusions of law are insufficient to defeat a motion for summary judgment." *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997); see also *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010).

The court must render summary judgment in favor of the moving party if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000). The Supreme Court has cautioned, however, that the ruling court must not encroach upon the functions of the jury. As the Court stated in *Reeves*,

> . . . the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence. The latter functions, along with the drawing of legitimate inferences from the facts, are for the jury, not the court. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.

*Id.* (citations omitted). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

### III. Analysis

#### A. Abandoned Claims

In her Response to Defendants' Motion for Summary Judgment, plaintiff expressly conceded the following claims against both Greenwood and Childs: (1) assault; (2) battery; (3) false imprisonment; (4) negligence; and (5) intentional infliction of emotional distress. Greenwood and Childs will be granted judgment on these claims. In addition, plaintiff did not address and therefore waived any §1983 claims against Greenwood for the failure to train, supervise and hire/screen Hawkins. Plaintiff similarly never addressed either Greenwood's

5

claim of immunity for Hawkins's actions that were outside the course and scope of his employment under MISS. CODE ANN. §11-46-5(2) and MISS. CODE ANN. § 11-46-7(2) or Greenwood's and Childs's claims of exemptions from liability under MISS. CODE ANN. § 11-46-9(1)(d). These abandoned claims are therefore dismissed.

### B. Section 1983 Claims against Childs.

Plaintiff has brought federal claims under 42 U.S.C. § 1983 alleging that (1) Officer Childs is liable for failing to prevent the alleged sexual assault; (2) the City is liable for employing Hawkins and Childs and for failing to train, supervise or properly hire its officers or adopt a needed policy. In her response to defendants' Motion for Summary Judgment, plaintiff failed to address the municipal defendant's argument that it is not liable for the §1983 claims as they relate to Hawkins. The Fifth Circuit Court of Appeals has specifically stated that a "failure to provide any legal or factual analysis of an issue results in waiver of that issue." *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 260 (5th Cir. 1995). The Southern District of Mississippi has further held that plaintiffs waived claims for which they made no argument in their response. *Dubose v. Oustalet*, 738 F. Supp. 188, 189 (S.D. Miss. 1990). The court holds that plaintiff's §1983 claims as they relate to Greenwood's failure to train and supervise Hawkins fail as a matter of law.

To state a claim under § 1983, "a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting under the color of state law." *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). However, "a qualified immunity defense 'serves to shield a government official from civil

liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Id.* Once a defendant asserts a defense of qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *Id.* To discharge that burden, Harris must establish that Childs committed a constitutional violation and that his actions were objectively unreasonable in light of the law that was clearly established on November 17, 2012. *Id.*

Harris asserts "that Childs violated [her] constitutional right of freedom of liberty and that Childs should be liable for that violation because he failed to intervene to stop the violation." Docket 50, p. 9. According to plaintiff, Childs had a duty to intervene and stop Hawkins's attack on plaintiff and that Childs had the opportunity to intervene, but failed to do so. Specifically, plaintiff alleges:

> [t]he moment [Childs] saw the door to Harris' house close behind his partner, he had a duty to either immediately discover whether his partner and/or Harris were safe, or to contact dispatch to inform them that he lost sight of his partner and Harris and is unaware if they are safe or not. He did neither. His omission is what proximately caused the rape of Harris and the deprivation of her right to personal freedom.

Docket 50, p. 9.

Plaintiff invokes *Ware v. Reed*, 709 F.2d 345, 353 (5th Cir. 1983), for the indisputable proposition that "one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." Indeed, the Fifth Circuit routinely has held that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v.*

7

*Townley*, 45 F.3d 914, 919 (5th Cir. 1995); see also *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); *Richie v. Wharton County Sheriff Dep't Star Team*, 2013 WL 616962, *2 (5th Cir. Feb. 19, 2013). *Whitley* specifically involved a §1983 claim against officers for sexual assault. As the Circuit stated in *Whitley*, "an officer may be liable under § 1983 under a theory of bystander liability where the officer (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act. . . However, liability will not attach where an officer is not present at the scene of the constitutional violation." *Whitley*, 726 F.3d at 646. *Whitley* held that the plaintiff did not articulate a bystander liability claim against one of the officers involved because plaintiff did not allege that particular officer was in the presence of the officer who was sexually abusing plaintiff while the abuse took place, and he therefore was not within the scope of a bystander liability claim. *Id.*

Plaintiff relies on *Paternostro v. Cresent City Connection Police Dept.*, 2002 WL 34476319, *11 (E.D. La. April 2, 2002) for clarification of the nonfeasance or bystander liability claim. Under *Paternostro* "[a]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983. . . The claim is essentially one of nonfeasance on the part of law enforcement officers. *Id.* However, "[t]o establish a violation of this duty, plaintiff must show that the officer had a realistic opportunity to prevent the constitutional violation, and the officer's failure to act must have been a proximate cause of plaintiff's injury." *Id.* The Circuit concluded that Paternostro's claim failed because despite the officer being physically present at the scene while Paternostro was beaten by another officer, the proof did not place the officer at the rear of the car

8

where the beating occurred. *Id.* Video evidence showed the officer walking away from the rear of the vehicle at or before the time plaintiff was hit, so plaintiff did not establish that the officer could have prevented his fellow officer from beating him. *Id.*

The facts in this case are weaker than both the *Whitley* and *Paternostro* cases. Plaintiff argues that

> while Childs might not have known that Hawkins was sexually assaulting Harris . . . his omission in failing to stay with his partner while on duty which his law enforcement training taught him or his complicity in knowing the purpose for which Hawkins came back to Harris' house was unreasonable under the circumstances and within his knowledge.

Docket 50, p. 9. For Childs to be held liable, he must have known that Hawkins intended to assault Harris and had a realistic opportunity to prevent the sexual assault. The facts are undisputed that Childs was in the patrol car at the time of the sexual assault. Plaintiff has admitted that Childs was not present and that Childs did not know what Hawkins was going to do when Hawkins went into her home and assaulted her.[2] Given that there is no evidence that Childs knew or reasonably should have known that Hawkins intended to sexually assault the plaintiff and that he was not actually present when the assault occurred, Childs had no realistic

---

[2] "Q. Ma'am, let me ask you: Do you have any knowledge that Officer Childs knew that anything that Officer Hawkins was up to as far as him assaulting you?
A. I don't know. I don't know if he knew or not.
. . . .
Q. Well, again, do you have any evidence that Officer Childs knew that Officer Hawkins was going to do what he did?
A. No, sir, I don't think he do."

Docket 45, Ex. 3, p. 29-31.

9

opportunity to prevent the violation. As a consequence, he may not be held liable for any bystander liability, and plaintiff's §1983 claim against Childs is dismissed.

### C. Section 1983 Claims against Greenwood.

Plaintiff alleged in her complaint that Greenwood is liable for "failing to adequately train, supervise, screen Hawkins during the hiring process, or adopt a needed policy." Docket 3, p. 5. Greenwood moved for summary judgment as to these claims, and plaintiff has not responded to this portion of Greenwood's motion. As discussed above, the Fifth Circuit has held that a failure to provide any legal or factual analysis of an issue results in the waiver of that issue. *Cavallini*, 44 F.3d at 260. Therefore, plaintiff's §1983 claims against Greenwood relating to Hawkins are dismissed.

Plaintiff further alleges a §1983 claim against Greenwood for failing to provide adequate training to Childs. Docket 3, p. 5. Specifically, in her response to the Motion for Summary Judgment, plaintiff asserts that "Greenwood was deliberately indifferent to the fact that a violation of Harris' right to be free from deprivation of her liberty was a highly predictable consequence because of the City's failure to train Childs which caused him to fail to intervene in the sexual assault of Harris." Docket 50, p. 14.

In the Fifth Circuit "to hold a municipality liable for failure to train an officer, it must have been obvious that 'the highly predictable consequence of not training' its officers was that they 'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk.'" *Peterson v. City of Fort Worth,* 588 F.3d 838, 849 (5th Cir. 2009). Further, "deliberate indifference" as alleged by a plaintiff generally requires "at least a pattern of *similar incidents in*

*which the citizens were injured.*" *Estate of Davis ex rel. McCully v. City of North Richmond Hills*, 406 F.3d 375, 383 (5th Cir. 2005) (emphasis the court's). In other words, "[w]hile the specificity required should not be exaggerated, our cases require the prior acts be fairly similar to what ultimately transpired . . ." *Id.* To support a claim of deliberate indifference arising out of a single incident such the incident in this case, a plaintiff must demonstrate that there was a complete and total failure to train, not just a failure to train in one limited area. *Id.*, at 386. As the court noted in *Estate of Davis,* "a showing of deliberate indifference requires that the Plaintiffs 'show that the failure to train reflects a "deliberate" or "conscious" choice to endanger constitutional rights.'" *Id.* at 383.

Plaintiff points to no evidence that Greenwood was aware of any risk that Hawkins or any other officers would commit a sexual assault or that Hawkins or any other officer had committed any similar act. Further, plaintiff has presented no facts – material or otherwise – which would create a genuine issue regarding her claim that it should have been obvious to Greenwood that the risk of sexual assaults was a "highly predictable consequence" of the alleged, but otherwise unarticulated failure to train. There is no evidence that Greenwood completely and totally failed to train its reserve officers. Childs began his employment with Greenwood in January 2012, and this incident occurred in November 2012. Childs's employment as a reserve officer or trainee complies with MISS. CODE ANN. §45-6-3(e) and § 45-6-11(3)(b) in that he was working under the direct control and supervision of a law enforcement officer at the time of the sexual assault and had not been a employed as a full-time trainee for longer than one year or a part-time trainee for longer than two years. Despite plaintiff's unsupported allegation to the contrary, there is no evidence that Greenwood was obligated to

11

require Childs to participate in the state Law Enforcement Training Academy or to obtain any specific training on protecting your partner other than that which he received on the job while under the direct control and supervision of various law enforcement officers to whom he was assigned. Plaintiff has not provided any evidence that it was obvious to Greenwood that its alleged failure to train Childs would result in sexual assaults by other officers upon citizens. Plaintiff's §1983 claim against Greenwood fails as a matter of law and is dismissed.

### D. Claim that Childs and Greenwood violated MISS. CODE ANN. § 11-46-9(1)(c).

MISS. CODE ANN. 11-46-9, also known as the Mississippi Tort Claims Act (hereinafter "MTCA") provides various exemptions from liability for governmental entities and their employees. As noted in Section III. A. above, the MTCA claims which plaintiff addressed in her response to the defendants' motion for summary judgment relate only to her MTCA claims against Childs himself and MTCA claims against Greenwood growing out of Childs's actions or inactions. Plaintiff emphasized that she does not seek recovery against Greenwood for Hawkins's alleged assault, battery, false imprisonment, negligence and intentional infliction of emotional distress upon plaintiff. Her choice to approach the defendant's motion in this manner is important in light of the statute's language and expressed purpose and the claims which the court must address in the case's current posture.

The MTCA "was enacted to provide a 'shield' from liability to the state and its political subdivisions. It lists a series of situations in which sovereign immunity is not waived, thereby limiting the government's exposure to tort suits." Shelly Mott Diaz & Robert A. Weems, Exempt or Not Exempt: Clarifying the Confusion Surrounding the Relationship Between the

Discretionary Function Exemption and the Performance of Statute Exemption in the Mississippi Tort Claims Act, 80 Miss. L.J. 35, 35 (2010) (discussing exemptions provided by the Mississippi Tort Claims Act). Section 11-46-9(1)(c) states:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
> . . . .
> (c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.

According to Harris, Childs and Greenwood may not claim exemption from liability under subsection 9(1)(c) because each of them acted in reckless disregard of Harris's safety and well-being. Docket 50, p. 5. The Mississippi Supreme Court has held that "[r]eckless disregard is 'a higher standard than gross negligence, and it embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act.'" *City of Jackson v. Shavers*, 97 So.3d 686, 688 (Miss. 2012). The supreme court went on to explain that reckless disregard "typically involves a conscious indifference to consequences, and almost a willingness that harm should follow. Reckless disregard is found where there is a deliberate disregard of an unreasonable risk and a high probability of harm." *Id.* The same court has stated, "reckless disregard under Section 11-46-9(1)(c) embraces willful and wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *Turner v. City of Ruleville*, 735 So.2d 226, 230 (Miss. 1999). "Police officers and fire fighters are more likely to be exposed to

13

dangerous situations and to liability, and therefore, public policy requires that they not be liable for mere negligence." *Maldonado v. Kelly*, 768 So.2d 906, 909 (Miss. 2000).

According to the Mississippi Supreme Court – and remembering that Harris here seeks to impose liability upon Greenwood due to Childs's action or inaction – plaintiff must show that Childs, and therefore Greenwood, appreciated an unreasonable risk to plaintiff's safety, understood that there was a high probability of harm to her, and when Childs failed to follow Hawkins into plaintiff's home, "deliberately disregard[ed] that risk in a willful or wanton manner, exhibiting a conscious indifference to the consequences and almost a willingness that harm should follow their actions" or inactions. *Id.* at 689. However, neither Greenwood nor Childs had any reason to believe that Hawkins was a risk to plaintiff's safety or that he posed a high probability of harm to her. There is no evidence that Hawkins had ever committed a sexual assault, much less while he was performing his duties as an officer. Under these circumstances, it cannot be said that either Childs or Greenwood "exhibited a conscious indifference to the consequences" or that they acted in reckless disregard for plaintiff's safety. The only thing Childs did wrong was obey the order of his supervising officer and remain in the car. That obeisance simply does not rise to the level of reckless disregard.

Plaintiff represents that her law enforcement expert, Chief Terrell Bolton, will testify that "the actions of Childs represent a blatant departure from law enforcement standard of conduct . . . , [Childs'] nonfeasance was clearly unreasonable under the circumstances where his fellow officer went into a house behind closed doors for several minutes without his ability to know or efforts to discovery what was happening." Docket 50, p. 6. However, even accepting this opinion as true, the Chief's expert opinion still does not place Childs's behavior into the

14

category of reckless disregard as that term has been defined by the state supreme court. His behavior was at most negligence, which is insufficient to establish liability under MISS. CODE ANN. § 11-46-9(1)(c). There is no genuine issue as to whether Childs or Greenwood acted in reckless disregard of plaintiff's safety. Therefore, both Greenwood and Childs are entitled to immunity under MISS. CODE ANN. § 11-46-9(1)(c).

### E.  Conclusion

For the foregoing reasons, the court finds that the defendant's motion for summary judgment is well taken and should be GRANTED. A separate Final Judgment in accord with this opinion will issue this day.

This, the 3rd day of July, 2014.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE